Floyd W. Bybee, #012651
**FLOYD W. BYBEE, PLLC**
2473 S. Higley Road
Suite 104, #308
Gilbert, Arizona 85297
Office:  (480) 756-8822
Fax:  (480) 756-8882
floyd@bybeelaw.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Terry L. McVey**, an individual; | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **COLLINS LAW OFFICES, LLC**, a New York limited liability company; **Timothy R. Collins**, an individual; **Andrew Fittings**, an individual; | |
| | (Jury Trial Demanded) |
| Defendants. | |

Plaintiff Terry L. McVey alleges as follows:

**I.   PRELIMINARY STATEMENT**

1.   Plaintiff brings this action for damages based upon
Defendants' violations of the Fair Debt Collection
Practices Act, 15 U.S.C. §§1692 *et seq.* (hereinafter
"FDCPA"), and for state law claims for unreasonable
debt collection and invasion of privacy.  In the

1  course of attempting to collect a debt allegedly owed

2  by Plaintiff, Defendants engaged in deceptive, unfair

3  and abusive debt collection practices in violation of

4  the FDCPA, and took actions which constitute

5  unreasonable debt collection and invasion of privacy

6  under the doctrine enunciated in <u>Fernandez v. United</u>

7  <u>Acceptance Corporation</u>, 610 P.2d 461 (Ariz. App.

8  1980).  Plaintiff seeks to recover actual damages, and

9  statutory damages, punitive damages, as well as

10  reasonable attorney's fees and costs.

**II.   STATUTORY STRUCTURE OF FDCPA.**

12  2.  Congress passed the FDCPA to eliminate abusive debt

13  collection practices by debt collectors, to insure

14  that those debt collectors who refrain from using

15  abusive debt collection practices are not

16  competitively disadvantaged, and to promote consistent

17  state action to protect consumers against debt

18  collection abuses. FDCPA § 1692.

19  3.  The FDCPA is designed to protect consumers who have

20  been victimized by unscrupulous debt collectors

21  regardless of whether a valid debt exists.  <u>Baker v.</u>

22  <u>G.C. Services Corp.</u>, 677 F.2d 775, 777 (9th Cir.

23  1982).

24  4.  The FDCPA defines a "consumer" as any natural person

25  obligated or allegedly obligated to pay any debt.

26  FDCPA § 1692a(3).

5.   The FDCPA defines "debt" as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject or the transaction are primarily for personal, family, or household purposes.  FDCPA § 1692a(5).

6.   The FDCPA defines "debt collector' as  any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection  of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.  FDCPA § 1692a(6).

7.   Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damage sustained; statutory damages up to $1,000; attorney's fees as determined by the Court and costs of the action. FDCPA § 1692k.

### III.   JURISDICTION

8.   Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1337.  Venue lies in the Tucson Division of the District of Arizona as Plaintiff's claims arose from acts of the Defendant perpetrated therein.

### IV.   PARTIES

9.   Plaintiff is an individual residing in Pima County, Arizona.

10.  Plaintiff is allegedly obligated to pay a consumer debt and is a "consumer" as defined by FDCPA §1692a(3).

11.  Defendant Collins Law Offices, LLC ("Collins Law Offices") is a New York limited liability company.

12.  Collins Law Offices is a New York law firm engaged is the practice of collecting consumer debt.

13.  Collins Law Offices regularly collects or attempts to collect debts owed or asserted to be owed or due another.

14.  Collins Law Offices is a "debt collector" as defined by FDCPA §1692a(6).

15.  Upon information Defendant Timothy R. Collins ("Collins") is a resident of the state of New York.

16.  Upon information and belief, Collins is the sole owner of Collins Law Offices.

17.  Upon information and belief, Collins controls the day to day operations of Collins Law Offices.

18.  Collins regularly collects or attempts to collect debts owed or asserted to be owed or due another.

19.  Collins is a "debt collector" as defined by FDCPA §1692a(6).

20.  Upon information Defendant Andrew Fittings ("Fittings") is a resident of the state of New York.

21. Fittings is employed by Collins Law Offices as a collector.

22. Fittings regularly collects or attempts to collect debts owed or asserted to be owed or due another.

23. Fittings is a "debt collector" as defined by FDCPA §1692a(6).

24. At all times relevant herein, Fittings was acting on behalf of and with full authority from Collins Law Offices.

25. Collins Law Offices is liable to Plaintiff for Fittings' actions.

26. Collins is liable for the actions of his law firm and its collectors.

## V.   FACTUAL ALLEGATIONS

27. Plaintiff opened a credit card account with Providian Financial Corporation, upon which, due to loss of employment, he subsequently defaulted.

28. Upon information and belief, Providian sold Plaintiff's account to First American Investment Company, LLC.

29. Upon information and belief, First American Investment Company assigned Plaintiff's account to Collins Law Office for collection.

30. Beginning in September 2006, Plaintiff received several calls from Collins Law Firm concerning the Providian account.

31. On or about December 12, 2006 Plaintiff received a voice message left by Fittings or another collector from Collins Law Office stating that he needed to talk to Plaintiff today concerning some legal proceedings, and that if he did not hear from him today, he would be signing off on the paperwork to be submitted to the Pima County Clerk's office.  In the message, the collector also stated that Plaintiff must call today if he had any intention of resolving this matter.

32. On or about December 21, 2006, Plaintiff received another voice message left by Fittings or another collector from Collins Law Office stating that he needed to speak with Plaintiff concerning some legal proceedings and paperwork that would be sent to Pima County.

33. On or about January 5, 2007, Plaintiff received a telephone voice message left by Fittings or another collector from Collins Law Office that this was Plaintiff's last chance to resolve this matter, and that he did not want to make life really miserable for Plaintiff, but that he had no choice and that the paperwork was going out to the Pima County after today.

34. On or about January 5, 2007, Plaintiff returned the call to Collins Law Office and spoke with Fittings.

35. During this conversation Fittings told Plaintiff that

the original balance on the account was $486.00, but
that with interest and penalties, and court costs and
attorney's fees, the balance was now at $8,200.00.

36. During this conversation Fittings demanded that
Plaintiff make payment arrangements on the account,
and suggested that he either borrow the money from a
relative or from his 401k plan, or pay with his
upcoming tax return.

37. When Plaintiff told Fittings that he could not do
this, Fittings became threatening and abusive towards
Plaintiff.  When Plaintiff told him he did not need
this kind of stress in his life, and suggested that
the stress was causing him to feel ill and that it
might cause him to have a heart attack, Fittings just
laughed and made fun of Plaintiff.  Immediately
thereafter, Plaintiff hung up.

38. On January 9, 2007, Plaintiff again called Collins Law
Office and spoke with Fittings, asking if he could
work things out.  Fittings told Plaintiff that he
could take a payment of $764.00, but Plaintiff said
that he could not do that right now, and that he would
need to get back with him.  Fittings represented to
Plaintiff, and Plaintiff understood, that the $764.00
would settle the account in full.

39. On January 10, 2007, Plaintiff telephoned Collins Law
Office and again spoke with Fittings.  Fittings told

Plaintiff that if he could pay $560.36 now and the remainder of the balance in two weeks, he would stop his associate from sending out wage garnishment paperwork to Pima County.  Fittings reviewed some numbers with Plaintiff concerning the garnishment, and then told Plaintiff that he would have a hard time living on what would be left of his paycheck after the wage garnishment.  Fittings also told Plaintiff that many employers fire employees when they get notice of a wage garnishment, and told Plaintiff that might happen to him.

40. On January 11, 2007 Plaintiff called Collins Law Office and spoke with Fittings.  Fittings told Plaintiff at that time that the $764.00 was not a settlement of the account, but rather it was just to keep the paperwork from being delivered to Pima County for wage garnishment, and that Plaintiff would need to make ten (10) additional payments of $253.00 for the next ten (10) months.  However, because of the threats to garnish his wages, and the fear he had of losing his job, and the stress it was causing him,  Plaintiff agreed to the payment arrangements with Collins Law Office and for the payments to be made with "phone checks."

41. Later that day, while at work, Plaintiff's co-workers noticed Plaintiff did not look well, and asked him

what was wrong.  Plaintiff explained that he was
dealing with some legal challenges and problems.  He
also told one co-worker that he was having problems
with a collection agency.

42. On January 11, 2007, Plaintiff went to his bank and
put a stop payment on the phone checks he had given to
Collins Law Office.

43. In addition, Plaintiff's counsel sent Collins Law
Office a letter of representation on January 12, 2007.

44. On that same date, Collins send a letter to counsel
stating that "we will remove the post-dated checks we
have on file."

45. Subsequent to January 12, 2007, Collins Law Firm
attempted to withdraw money from Plaintiff's bank for
payment on the alleged debt.

46. On January 12, 2007, Plaintiff became ill and had what
he believed to be a minor stroke, and he lost the
hearing in one ear.  He went to the local medical
clinic who examined him and told him to immediately go
to the Banner Hospital in Buckeye Arizona for further
evaluation.

47. Plaintiff traveled to Buckeye and to the emergency
room at the Banner Hospital.

48. Banner evaluated Plaintiff and determined that he had
not suffered a stroke, but that his symptoms were
caused by stress and anxiety.

49. Banner prescribed Plaintiff medication for the stress and anxiety and ordered him to follow up with future doctor visits.

50. The statements by Defendants, as set forth above, were false when they were made, and were made with intent to harass, embarrass and humiliate and cause anxiety to Plaintiff and coerce payment out of him.

51. As the result and proximate cause of Defendants' actions as set forth above, Plaintiff has suffered and continues to suffer actual damages.  These damages include, but are not limited to, headaches, loss of sleep, inability to concentrate, depression, fear, worry, anxiety, embarrassment, humiliation, and other extreme emotional distress.  They also include bank charges, travel expenses, medical expenses, and prescription charges.

52. Defendants' actions were intentional, willful, and in gross or reckless disregard of the rights of Plaintiff and as part of its persistent and routine practice of debt collection.

53. In the alternative, Defendant's actions were negligent.

## VI.   CAUSES OF ACTION

### a.   Fair Debt Collection Practices Act

54. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

55.  Defendants' actions violate of the FDCPA including,
     but not necessarily limited to, 15 U.S.C. §§ 1692d,
     1692d(2), 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(3),
     1692e(4), 1692e(5), 1692e(10), 1692f, 1692f(1),
     1692f(4), and 1692f(5).

56.  As a direct result and proximate cause of Defendants'
     actions which violate the provisions of the FDCPA,
     Plaintiff has suffered actual damages for which
     Defendants are liable.

                    **b.   Invasion of Privacy**

57.  Plaintiff repeats, re-alleges, and incorporates by
     reference the foregoing paragraphs.

58.  Defendants' actions constitute unreasonable debt
     collection practices, and an invasion of Plaintiff's
     privacy pursuant to the doctrine enunciated in
     Fernandez v. United Acceptance Corporation, 610 P.2d
     461 (Ariz. App. 1980).

59.  As a direct result and proximate cause of Defendants'
     actions, Plaintiff has suffered actual damages for
     which Defendants are liable.

                **VII.   DEMAND FOR JURY TRIAL**

     Plaintiff hereby demands a jury trial on all issues so
triable.

                **VIII.   PRAYER FOR RELIEF**

     WHEREFORE, Plaintiff requests that judgment be entered
against Defendants for:

1    a)   Statutory damages of $1,000 for each defendant

2         pursuant to §1692k;

3    b)   Actual damages in an amount to be determined at

4         trial;

5    c)   Punitive damages in an amount to be determined at

6         trial;

7    d)   Costs and reasonable attorney's fees pursuant to

8         §1692k; and

9    e)   Such other relief as may be just and proper.

10

11   DATED   January 30, 2007   .

12

13                           s/ Floyd W. Bybee
                             Floyd W. Bybee, #012651
14                           **FLOYD W. BYBEE, PLLC**
                             2473 S. Higley Road
15                           Suite 104, #308
                             Gilbert, Arizona 85297
16                           Office:  (480) 756-8822
                             Fax:  (480) 756-8882
17                           floyd@bybeelaw.com

18                           Attorney for Plaintiff

19

20

21

22

23

24

25

26